UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JULIE A. NOLAN,

                Plaintiff,

v.                                                   1:17-CV-1190
                                                    (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC        KENNETH HILLER, ESQ.
  Counsel for Plaintiff                                MARY ELLEN GILL, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                    BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II    CRAIG HUNDLEY, ESQ.
  Counsel for Defendant                              DENNIS CANNING, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

On June 11, 2018, the parties consented, in accordance with a Standing Order to proceed before the undersigned. (Dkt. No. 7.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is granted, and the Commissioner's motion is denied.

**I.      RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1966. (T. 126.) She completed high school. (T. 436.) Generally, Plaintiff's alleged disability consists of fibromyalgia, degenerative scoliosis, lupus, a "heart condition," arthritis, and "chronic back pain." (T. 435.) Her alleged disability onset date is April 26, 2011. (T. 126.) Her date last insured is September 30, 2016. (T.17.) She previously worked as a housekeeper and child care worker. (T. 25.)

### B. Procedural History

On April 29, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 126.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 7, 2013, Plaintiff appeared before the ALJ, Michael Friedman. (T. 63-77.) On January 28, 2013, ALJ Friedman issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 137-146.) On April 22, 2014, the Appeals Council ("AC") granted Plaintiff's request for review and remanded Plaintiff's case for further proceedings. (T. 151-155.) On March 20, 2015, Plaintiff appeared before the ALJ William M. Weir. (T. 78-125.) On July 31, 2015, ALJ Weir issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 17-33.) On September 18, 2017, the AC denied Plaintiff's request for review, thus rending the ALJ's decision the final decision of the Commissioner. Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-27.) First, the ALJ found Plaintiff met the insured status requirements through September 30, 2016 and Plaintiff had not engaged in substantial gainful activity since April 26, 2011. (*Id*.) Second, the ALJ found Plaintiff had the severe impairments of degenerative disc disease, hearing loss, a depressive disorder, and an anxiety disorder. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 20.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except perform only unskilled work, frequently interact with co-workers and supervisors, occasional contact with the general public, occasionally lift and carry fifteen pounds, frequently lift and carry eight pounds, sit for six hours in an eight-hour period with normal breaks, stand for three out of eight hours in forty minute increments with one-to-two minute transition breaks, occasionally climb ramps and stairs with a railing, occasionally kneel, crouch, stoop, and bend, never use ladders, scaffolds, or ropes, never crawl, never be around heavy vibration, never use dangerous machinery, never work around unprotected heights, never work in extreme cold, constantly use arms and hands to perform fine and gross manipulations, and never work in an environment that is louder than 85 decibels, defined as city traffic.

(T. 21-22.)[1] Fifth, the ALJ determined Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 25-27.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567(b), 416.967(b).

3

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to weigh the medical expert's opinion and the consultative examiner's opinion was too vague to provide substantial evidence to support the ALJ's physical RFC determination. (Dkt. No. 8 at 15-18.) Second, and lastly, Plaintiff argues the mental RFC was not supported by substantial evidence because the ALJ failed to properly weigh the consultative examiner's opinion, which was stale pursuant to the ALJ's own reasoning, and the ALJ failed to update the record with a current functional opinion pursuant to the AC's order. (*Id*. at 18-20.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ properly weighed the opinions concerning Plaintiff's physical limitations. (Dkt. No. 11 at 9-19.) Second, and lastly, Defendant argues the ALJ properly weighed the opinions as to Plaintiff's mental limitations. (*Id*. at 19-23.)

### C. Plaintiff's Reply

Plaintiff filed a reply in which she reiterated her original arguments. (Dkt. No. 12.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Medical Expert, Alan Levine, M.D.

Plaintiff argues the ALJ committed legal error in failing to evaluate, weigh, or discuss, the medical opinion of non-examining medical expert, Dr. Levine. (Dkt. No. 8 at 15-17.) Defendant argues the ALJ's decision reflected how he weighed Dr. Levine's opinion and therefore any error to not explicitly identify the weight given to Dr. Levine's opinion was harmless. (Dkt. No. 11 at 9-15.) For the reasons discussed herein, the ALJ failed to properly evaluate Dr. Levine's opinion and such failure was not harmless error.

At Plaintiff's March 2015 hearing, the ALJ called on Dr. Levine to provide medical testimony. (T. 83-97.) Dr. Levine reviewed the medical record, elicited testimony from Plaintiff, and provided a detailed medical opinion regarding Plaintiff's ability to perform work related functions. (*Id*.) Dr. Levine opined Plaintiff could occasionally lift and carry 15 pounds and frequently lift and carry eight pounds. (T. 94.) He opined, out of an eight-hour work day, Plaintiff could: sit for six hours; stand for two hours, but not longer than 40 minutes at a time with the ability to sit for one to two minutes; and walk for two hours, but not longer than 30 minutes at a time with the ability to sit for one to two minutes. (T. 94-95.) He opined Plaintiff could occasionally navigate stairs and ramps with a railing. (T. 95.) Dr. Levine opined Plaintiff could occasionally, but not repetitively: kneel; crouch; stoop; and bend. (*Id*.) He opined Plaintiff should avoid: ladders; scaffolds; crawling; heavy machinery with dangerous equipment; unprotected heights; and extreme cold. (*Id*.) Lastly, he opined Plaintiff had unlimited use of her upper extremities. (*Id*.)

In his written decision, the ALJ explicitly mentioned Dr. Levine and his testimony once. At step two, the ALJ determined Plaintiff's fibromyalgia was not a medically determinable impairment, in part, based on the testimony of Dr. Levine that the record failed to reflect the necessary clinical information to support a diagnosis of fibromyalgia. (T. 19.) The ALJ's written decision contained no other explicit or implicit reference to Dr. Levine or his testimony.

In his step four analysis, the ALJ stated he considered all opinions under 20 C.F.R. §§ 404.1527 and 416.927, and SSR 06-03p. (T. 24.)[2]. The ALJ outlined and

---

[2] Effective March 27, 2017, many of the regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new

weighed the medical opinions provided by the psychological consultative examiner, the physical consultative examiner, and the State agency medical reviewer. (T. 24-25.) The ALJ even discussed the statement provided by the non-medical State disability examiner. (T. 25.) Despite his detailed assessment of medical, and other, opinion evidence in the record, ALJ failed to evaluate Dr. Levine's medical opinion.

The regulations state "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §§ 404.1527(c), 416.927(c). The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. *Id*. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Failure to provide specific weight to a medical opinion does not constitute *per se* remandable error. The Second Circuit has held, where an ALJ fails to provide a specific weight to an opinion remand may not be necessary if the ALJ's rational can be inferred from his decision. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) ("Although the ALJ did not describe in detail her rationale, we can infer from the decision that she attributed 'great weight' to the opinion because she found it most consistent with the record as a whole."); *see also Brault v. SSA, Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012) (an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered); *see also Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (the court does "not require that [an] ALJ have mentioned every item of testimony presented to

---

regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").

Although the ALJ's RFC tracks Dr. Levine's opinion, the ALJ's reasoning in adopting the doctor's opinion cannot be gleaned from the record. The ALJ's reasoning is further befuddled because the ALJ stated he relied on the consultative examiner's opinion in formulating his RFC. And lastly, there are small, but potentially meaningful, deviations between Dr. Levine's opinion, the hypothetical presented to the vocational expert ("VE"), and the RFC determination.

The ALJ's failure to discuss, or even mention, Dr. Levine's medical opinion in his step four analysis frustrates meaningful review because it hinders the court's ability to determine whether the ALJ's decision is supported by substantial evidence. Overall, the ALJ failed to meet his duty to set forth his reasons for assessing medical evidence, and ultimately his RFC determination, "with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see also Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot ... conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.' ") (quoting *Morgan o.b.o. Morgan v. Chater*, 913 F. Supp. 184, 188-89 (W.D.N.Y. 1996)); *see Felton v. Astrue*, No. 09-CV-0538, 2010 WL 3880628, at *5 (N.D.N.Y. Sept. 10, 2010), *report and recommendation adopted,* No. 5:09-CV-0538, 2010 WL 3842808 (N.D.N.Y. Sept. 28, 2010) ("The ALJ's failure to properly evaluate the various medical opinions of record

hinders the Court's ability to determine whether the ALJ's decision is supported by substantial evidence.").

Defendant asserts, although the ALJ did not assign a specific weight to Dr. Levine's opinion, the ALJ's decision reflects that he relied significantly upon the opinion in formulating his RFC. (Dkt. No. 11 at 10.) To be sure, the ALJ's RFC determination, with some variations discussed below, mirrors Dr. Levine's medical source opinion. (Compare T. 21-22 with T. 94-95.) The ALJ's failure to provide specific weight could be construed as harmless error because the RFC reflected the doctor's opinion and therefore, the ALJ must have afforded the doctor's opinion significant weight. However, the ALJ's reasoning for adopting Dr. Levine's opinion cannot be gleaned from the record.

Defendant's argument fails because failure to assign a specific weight to an opinion is only harmless where an ALJ's reasoning can be inferred from the decision. Here, the ALJ's reasoning cannot be gleaned from his decision because the decision makes no reference to Dr. Levine's opinion regarding Plaintiff's functional abilities.

Although clear to the reader the ALJ's detailed RFC determination tracked Dr. Levine's very specific medical opinion, the ALJ's decision provides no insight into why the ALJ relied on the doctor's opinion. Further, the ALJ stated in his written decision he relied on a different medical opinion in formulating the RFC. In evaluating the medical opinion evidence in the record, the ALJ stated he afforded consultative examiner, Dr. Prezio's opinion, "great weight" and "relied on [Dr. Prezio's opinion] to limit [Plaintiff] to light work, and to establish her postural limitations." (T. 25.) Dr. Prezio opined Plaintiff had "mild-to-moderate restriction for prolonged standing and walking, squatting,

kneeling, doing any heavy lifting or carrying objective of any significant weight because of the significant lumbar compromise." (T. 506.) Although the ALJ's RFC mirrors Dr. Levine's medical opinion, the ALJ stated in his decision he relied on Dr. Prezio's medical opinion in formulating his RFC. This inconsistency further frustrates meaningful review.

The ALJ committed reversible error when he failed to mention, consider, or discuss Dr. Levine's medical opinion. Although the ALJ's written decision indicated he relied on Dr. Prezio in formulating his physical RFC determination, it is abundantly clear the ALJ based his very specific physical RFC on Dr. Levine's opinion. Because there was no discussion of the doctor's opinion this court cannot determine whether the ALJ applied the proper legal standards in assessing Dr. Levine's opinion or whether the ALJ's determinations were supported by substantial evidence.

In addition, there are small, but possibly meaningful variations between Dr. Levine's opinion, the hypothetical presented to the VE, and the ALJ's RFC that should be clarified on remand. Dr. Levine testified Plaintiff could stand for two hours out of an eight-hour workday, but not longer than 40 minutes at a time. (T. 94.) The hypothetical presented to the VE stated Plaintiff could stand for three hours out of an eight-hour workday, but not longer than 40 minutes at a time. (T. 121.) The RFC stated Plaintiff could stand for three hours out of an eight-hour workday, but not longer than 40 minutes at a time. (T. 21.) Another inconsistency concerns Plaintiff's ability to walk. Dr. Levine testified Plaintiff could walk for two hours out of an eight-hour workday, but not longer than 30 minutes. (T. 94.) The hypothetical presented to the VE stated Plaintiff could walk two hours out of an eight-hour workday, but not longer than 30 minutes. (T. 121.)

However, the RFC stated Plaintiff could walk for two hours out of an eight-hour workday, but not longer than 40 minutes. (T. 21.) Because remand is necessary for a proper evaluation of Dr. Levine's opinion, any inconsistencies can be remedied on remand.

Plaintiff makes the additional argument the ALJ erred in affording "great weight" to Dr. Prezio's opinion because the opinion was too vague. (Dkt. No. 8 at 17-18.) Due to the errors already identified and the impact they may have on the ultimate physical RFC determination, the ALJ should reassess Dr. Prezio's opinion on remand as well.

Overall, the ALJ's failure to discuss, or even mention, Dr. Levine or his opinion in his otherwise detailed step four analysis frustrates meaningful review. Without a proper discussion of Dr. Levine's opinion this court cannot determine whether the ALJ adhered to the regulations or whether the ALJ's decision was supported by substantial evidence.

### B.   Mental RFC Determination

In formulating Plaintiff's mental RFC, the ALJ relied on the medical evidence provided by consultative examiner Sandra Jensen, Ph.D. and treatment notations in the record. (T. 24-25.)

On July 13, 2011, Dr. Jensen performed a psychiatric evaluation and provided a medical source statement. (T. 499-502.) Dr. Jensen opined Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress without any difficulty. (T. 501.) Dr. Jensen did not provide any mental health diagnoses. (T. 502.) The ALJ afforded Dr.

Jensen's opinion "great weight" reasoning it was based on a thorough examination and "supported by other evidence in the record."  (T. 24-25.)[3]

Plaintiff asserts the ALJ erred in adopting Dr. Jensen's opinion because her opinion was "stale" and the ALJ's reasoning for adopting Dr. Jensen's opinion was conclusory.  (Dkt. No. 8 at 18-20.)  As an initial matter, although the ALJ afforded Dr. Jensen's opinion great weight, his mental RFC determination provided for greater limitations than opined by the doctor.  The ALJ limited Plaintiff to unskilled work, frequent interaction with co-workers and supervisors, and occasional contact with the general public.  (T. 21.)  Plaintiff fails to cite to any evidence in the record supporting greater limitations than imposed by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721 (2d Cir. 2018) (plaintiff had a duty to prove a more restrictive RFC, and failed to do so); *see Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

Plaintiff asserts Dr. Jensen's opinion was "stale."  (Dkt. No.8 at 18-19.)  To be sure, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding."  *Camille v. Colvin*, 104 F.Supp.3d 329, 343 (W.D.N.Y. 2015).  "However, a medical opinion is not necessarily stale simply based on its age."  *Biro v. Comm'r of Soc. Sec.,* 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018); *see Andrews v. Berryhill*, No. 17-CV-6368, 2018 WL

---

[3] The ALJ cited to Exhibit 20F and 23F.  (T. 25.)  Exhibit 20F contains treatment notes from Family Health Medical Services covering March 13, 2013 through September 3, 2014.  (T. 694-788.)  Exhibit 23F contains treatment notes from Family Health Medical Services covering September 21, 2012 through September 30, 2014.  (T. 796-840.)

2088064, at *3 (W.D.N.Y. May 4, 2018) (ALJ did not err in relying on dated opinions where there was no indication the plaintiff's "condition had significantly deteriorated after the issuance of ... [the] opinions such that they were rendered stale or incomplete"). Here, Plaintiff failed to show that her mental health impairment deteriorated after Dr. Jensen performed her examination and provided her opinion. Indeed, Plaintiff fails to provide any evidence her mental health limitations were greater than those found by the ALJ. Therefore, Plaintiff's assertion that Dr. Jensen's opinion was stale and cannot provide substantial evidence to support the ALJ's mental RFC is without merit.

Plaintiff further argues the ALJ failed to comply with the 2014 AC order. (Dkt. No. 8 at 18.) The AC directed the ALJ on remand to obtain "additional, updated evidence concerning [Plaintiff's] impairments [. . .] additional evidence may include, if warranted and available, appropriate physical and mental status consultative examinations and medical source statements." (T. 153.) Failure to comply with a remand order may be grounds for remand. *See Scott v. Barnhart,* 592 F.Supp.2d 360, 371-372 (W.D.N.Y.2009) ("The ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand."); *see Gorman v. Astrue*, No. 5:08-CV-0251, 2009 WL 4884469, at *10 (N.D.N.Y. Dec. 10, 2009) (remanding for failure to comply with an AC remand order). The AC order did not compel the ALJ to obtain new consultative examinations but instead directed the ALJ to obtain additional evidence "if warranted and available." (T. 153.) Therefore, it was in the ALJ's discretion to obtain new consultative examinations. Further, as stated herein, Plaintiff fails to show her mental impairments imposed greater limitations than imposed by the ALJ.

However, because this matter is being remanded for a proper assessment of the medical opinion evidence in the record and physical RFC determination, this decision should not be read as precluding a re-assessment of Plaintiff's mental RFC should new evidence be available.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: January 28, 2019

William B. Mitchell Carter
U.S. Magistrate Judge